UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUSTAVO DE LA PAZ SALAZAR, et al., <br><br> Petitioners, <br><br> v. <br><br> KRISTI NOEM, et al., <br><br> Respondents. | No. 1:26-cv-0899-DC-SCR (HC) <br><br> ORDER DENYING PETITIONERS' MOTION FOR A TEMPORARY RESTRAINING ORDER WITHOUT PREJUDICE <br><br> (Doc. No. 2) |

This matter is before the court on Petitioners Gustavo De La Paz Salazar, Manuel Arrellano Ramirez, Julian De La Rosa Gonzalez, and Luis Lopez Vasquez's motion for a temporary restraining order (Doc. No. 2), filed in conjunction with their petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, challenging their ongoing immigration detention. (Doc. No. 1.) For the reasons explained below, the court will deny Petitioners' motion for a temporary restraining order without prejudice.

## BACKGROUND

**A.     Factual Background**

Petitioners are all noncitizens presently in the custody of U.S. Immigration and Customs Enforcement ("ICE") following their arrests between August and October 2025. (Doc. No. 1 at 2.) Petitioners allege that they were not provided with bond hearings at the time of their arrests, and therefore their present detentions are in violation of their Fifth Amendment rights to due

process, and in violation of the court order certifying a class of noncitizens in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).[1] (Doc. No. 2.)

Petitioners allege as follows:

1. <u>Gustavo De La Paz Salazar</u>

Petitioners allege that Mr. Paz Salazar was detained by immigration agents on August 24, 2025, in Torrance, California. (Doc. No. 1 at ¶ 15.) Petitioners do not sufficiently allege when Mr. Paz Salazar entered the United States.[2] Mr. Paz Salazar's record of deportable/inadmissible alien, attached as an exhibit to Petitioners' habeas petition, states that Mr. Paz Salazar entered the United States "[o]n an unknown date, at or near an unknown location . . . without being admitted or paroled by an Immigration Officer." (Doc. No. 1-2 at 26.) Petitioners allege that Mr. Paz Salazar "is not subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231." (Doc. No. 1 at ¶ 15.) Mr. Paz Salazar is currently detained at the California City Detention Center in California City, California. (*Id.*) Petitioners do not provide any further information regarding Mr. Paz Salazar's arrival into the United States, his detention by ICE, or his life in the United States in the intervening time.

---

[1] As discussed further below, in *Maldonado Bautista*, the court certified a class of "[a]ll noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Maldonado Bautista*, 2025 WL 3678485 at *32. The court then vacated as unlawful a DHS policy declaring that all such class members are subject to mandatory detention pursuant to 8 U.S.C. § 1225(b). *Id.*

[2] In response to the court's request for supplemental briefing, discussed further below, Petitioners allege that Mr. Paz Salazar most recent date of entry into the United States was "on or before January 20, 2020." (Doc. No. 11 at 3.) To support this allegation, Petitioners cite to Mr. Paz Salazar's record of deportable/inadmissible alien, which states that he has been employed since January 20, 2020. (Doc. No. 1-2 at 23.) But that record does not indicate whether Mr. Paz Salazar has been employed continuously during this period, whether he exited or entered the United States during his employment, or whether the start of his employment coincided with his entry into the United States. Thus, Petitioners have not sufficiently alleged when Mr. Paz Salazar last entered the United States.

### 2. Manuel Arrellano Ramirez

Petitioners allege that Mr. Arrellano Ramirez was detained by immigration agents on September 8, 2025, in Fresno, California. (Doc. No. 1 at ¶ 16.) Petitioners allege, "upon information and belief," that Mr. Arrellano Ramirez entered the United States in "approximately 2001." (Doc. No. 11 at 3.) Mr. Arrellano Ramirez's record of deportable/inadmissible alien, attached as an exhibit to Petitioners' habeas petition, states that Mr. Arrellano Ramirez entered the United States "at an unknown place on an unknown date." (Doc. No. 1-2 at 30.) That same document further indicates that Mr. Arrellano Ramirez has been arrested on four occasions for the following offenses: (1) use of a controlled substance on October 10, 1998; (2) possession of a controlled substance on October 27, 1998; (3) use of a controlled substance on February 17, 2010; and (4) driving without a license and purchase for sale of a controlled substance on February 17, 2010. (*Id.*) No charges were filed as to any of these arrests. (*Id.*) Petitioners allege that Petitioner "is not subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231." (Doc. No. 1 at ¶ 16.) Petitioners allege that Mr. Arrellano Ramirez is currently detained in the Golden State Annex Detention Center in McFarland, California. (*Id.*) Petitioners do not provide any further information regarding Mr. Arrellano Ramirez's arrival into the United States, his detention by ICE, or his life in the United States in the intervening time.

### 3. Julian De La Rosa Gonzalez

Petitioners allege that Mr. Rosa Gonzalez was detained by immigration agents on August 11, 2025, in Fresno, California. (Doc. No. 1 at ¶ 17.) Mr. Rosa Gonzalez's record of deportable/inadmissible alien, attached as an exhibit to Petitioners' habeas petition, states that Mr. Rosa Gonzalez informed ICE agents that he "last entered the United States on or about an unknown date in 1999." (Doc. No. 1-2 at 35.) That same document further indicates that Mr. Rosa Gonzalez previously entered the United States on July 7, 1999, and was "apprehended by United States Border Patrol" and "voluntarily returned on the same day to Mexico." (*Id.* at 36.) Mr. Rosa Gonzalez was arrested for DUI: Alcohol/Drugs on July 23, 2022. (*Id.*) Petitioners allege that Mr. Rosa Gonzalez was "granted relief for his charges," but provide no further clarification as to his criminal record. (Doc. No. 11 at 5.) Petitioners allege that Mr. Rosa Gonzalez "is not subject to

detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231." (Doc. No. 1 at ¶ 17.) Petitioners allege that Mr. Rosa Gonzalez is currently detained in the Golden State Annex Detention Center. (*Id.*) Petitioners do not provide any further information regarding Mr. Rosa Gonzalez's arrival into the United States, his detention by ICE, or his life in the United States in the intervening time.

### 4. Jorge Luis Lopez Vasquez

Petitioners allege that Mr. Lopez Vasquez was detained by immigration agents on October 6, 2025, in Fresno, California. (Doc. No. 1 at ¶ 18.) Petitioners allege that Mr. Lopez Vasquez "has resided in the United States since approximately 1994." (*Id.*) Mr. Lopez Vasquez's record of deportable/inadmissible alien, attached as an exhibit to Petitioners' habeas petition, states that Mr. Lopez Vasquez informed ICE agents that he "entered [the United States] without inspection in January 1994." (Doc. No. 1-2 at 39.) Petitioners allege that Mr. Lopez Vasquez "is not subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231." (Doc. No. 1 at ¶ 18.) Petitioners allege that Mr. Lopez Vasquez is currently detained in the Golden State Annex Detention Center. (*Id.*) Petitioners do not provide any further information regarding Mr. Lopez Vasquez's arrival into the United States, his detention by ICE, or his life in the United States in the intervening time.

**B.   Procedural Background**

On February 2, 2026, Petitioners filed their petition for writ of habeas corpus asserting the following claims against Respondents Kristi Noem, Pamela Bondi, Todd Lyons, Sergio Albarran, Tonya Andrews, Christopher Chestnut, the Executive Office for Immigration Review, the Department of Homeland Security ("DHS"), and ICE: (1) violation of the Immigration and Nationality Act pursuant to *Maldonado Bautista*; (2) violation of 8 U.S.C. § 1226(a); and (3) violation of Petitioners' Fifth Amendment right to due process. (Doc. No. 1 at 8–10.) Petitioners seek an order (i) forbidding Respondents from transferring Petitioners outside of the Eastern District of California while their petition is pending, (ii) requiring Petitioners' immediate release, or, in the alternative, a bond hearing before a neutral immigration judge, (iii) declaring that Petitioners' detention is governed by 8 U.S.C. § 1226(a) and that their detention under 8 U.S.C. §

1225(b)(2) is unlawful, and (iv) awarding Petitioners' attorney's fees and costs pursuant to the Equal Access to Justice Act. (*Id.* at 11–12.) On that same day, Petitioners filed the pending motion for a temporary restraining order, predicated solely on their first claim for relief, arguing that their continued detention is unlawful because they are class members of the nationwide class in *Maldonado Bautista*, and their continued detention is causing immediate and irreparable injury in the form of the unlawful deprivation of their liberty.[3] (Doc. No. 2 at 6–10.)

The court issued an order setting a briefing schedule on Petitioners' motion and directing Respondents to address whether there are any factual or legal issues materially distinguishing Petitioners' due process claim from those previously addressed by the court in *Selis Tinoco v. Noem,* 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025), *Labrador-Prato v. Noem,* 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025), and *D.L.C. v. Wofford,* 1:25-cv-01996-DC-JDP, 2026 WL 25511 (E.D. Cal. Jan. 5, 2026).[4] (Doc. No. 6.) The court further indicated that it was considering ruling simultaneously on Petitioners' habeas petition and motion for a temporary restraining order and asked the parties to indicate whether they opposed the court ruling directly on the petition as to the due process claim.[5]

---

[3] Local Rule 231(b) states: "In considering a motion for a temporary restraining order, the Court will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order." L.R. 231(b). On the TRO Checklist Petitioners filed with their motion, Petitioners indicate the motion could not have been brought earlier, and that there has been no undue delay because "Petitioners seek relief at earliest possible opportunity" and "are filing [the] TRO request concurrently with [the] habeas petition." (Doc. No. 2-3 at 1.) This response does not address why relief was not sought at an earlier date, or why emergency relief is now needed, as all Petitioners have been detained for over 120 days. Accordingly, the court finds that Petitioners' motion for a temporary restraining order was not timely filed, but the court will consider Petitioners' motion as a motion for preliminary injunction given that the standards for the different types of injunctive relief are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

[4] In each of the prior cases referred to in the court's order, the court ordered that noncitizens previously released by ICE pursuant to 8 U.S.C. § 1226(a) or 8 U.S.C. § 1182(d)(5) maintain a liberty interest in their continued release, and that due process requires that the government provide them with a pre-deprivation bond hearing before a neutral arbiter before they can be re-detained.

[5] Because the court will deny Petitioners' motion for a temporary restraining order considered a

1     On February 4, 2026, Respondents filed their opposition arguing that Petitioners' claims
2  are distinguishable from the aforementioned cases because "[n]one of the Petitioners had prior
3  releases in the discretion of DHS, in contrast with the petitioners in" the cases cited by the court,
4  and therefore Petitioners maintained "no such liberty interest" in their continued freedom. (Doc.
5  No. 8 at 1, 2.) Petitioners further noted that the court in *Maldonado Bautista* expressly limited its
6  order, stating that it was "not [] an order by the Court to require Respondents to provide habeas
7  relief for all class members across the nation." (*Id.* at 2) (citing *Maldonado Bautista*, 2025 WL
8  3713987 at *29 n.23.)

9     On February 5, 2026, Petitioners filed their reply brief in which they reiterated their
10 contention that they are class members in *Maldonado Bautista*, and therefore a court has already
11 ruled that their present detention is unlawful. (Doc. No. 9 at 2–3.) Petitioners also argued that
12 they are entitled to immediate release based on their Fifth Amendment Due Process claim, an
13 argument not asserted in their motion for a temporary restraining order. (*Id.* at 3.)

14    On February 9, 2026, the court issued an order directing Petitioners to file a supplemental
15 brief providing more information supporting their due process claim, which was raised for the
16 first time in their reply. (Doc. No. 10.) Specifically, the court directed Petitioners to provide
17 information as to (i) when each Petitioner most recently entered the United States; (ii) each
18 Petitioner's interactions with U.S. immigration authorities prior to their most recent detention;
19 (iii) each Petitioner's criminal history while in the United States; (iv) whether each Petitioner has
20 requested a bond hearing during their present detention; and (v) any other information relevant to
21 each Petitioner's liberty interest in their continued freedom in the United States. (*Id.*)

22    The next day, Petitioners filed their supplemental brief in which they emphasized that
23 their "primary claim is set forth in Count One of the Habeas Petition, specifically that Petitioners
24 are members of the *Maldonado Bautista* Bond Eligible Class" and that "Petitioners did not intend
25 to shift their primary statutory argument for relief based on membership in the *Maldonado*
26 *Bautista* Bond Eligible Class to the due process claim set forth in Count Three of the Habeas

---

27/28 motion for preliminary injunction without prejudice, the court will not rule directly on Petitioners' habeas petition in this order.

6

1  Petition." (Doc. No. 11 at 1, 2.) Despite the court's request for additional information, Petitioners
2  largely provided information that was derived from the exhibits attached to their petition. (*Id.* at
3  3–5.) Petitioners also clarified that "[n]one of the Petitioners requested a bond hearing." (*Id.* at 5.)
4       On February 19, 2026, Petitioners filed a notice of new authority regarding a February 18,
5  2026 order in *Maldonado Bautista* granting the petitioners' motion to enforce judgment. (Doc.
6  No. 12.) As discussed below, this order does not impact the court's analysis here.
7       On February 20, 2026, Respondents filed a response to Petitioners' supplemental briefing
8  in which they argue that Petitioners' supplemental brief failed to establish Petitioners' liberty
9  interest in their continued release, and that the February 18 *Maldonado Bautista* order does not
10 bind this court.

## LEGAL STANDARD

12      Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear
13 showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555
14 U.S. 7, 22 (2008) (citation omitted). To obtain injunctive relief, the moving party must show: (1)
15 a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in
16 the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party;
17 and (4) that an injunction is in the public interest. *Winter*, 555 U.S. 7, 20 (2008). The likelihood
18 of success on the merits is the most important *Winter* factor. *Disney Enters., Inc. v. VidAngel,*
19 *Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).
20      A party seeking injunctive relief must make a showing on all four prongs of the *Winter*
21 factors to obtain injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th
22 Cir. 2011); *see Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction
23 is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a
24 clear showing, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968,
25 972 (1997)). A district court may consider "the parties' pleadings, declarations, affidavits, and
26 exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle*
27 *& Pistol Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F.Supp.3d 1037, 1048 (C.D. Cal. 2024); *see*
28 *also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly

go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

## DISCUSSION

### A.   Likelihood of Success on the Merits

Petitioners contend that they are entitled to injunctive relief based on their class membership in the *Maldonado Bautista* class action. (Doc. No. 2 at 5–6.) Respondents do not affirmatively contest Petitioners' membership in the *Maldonado Bautista* class but instead contend "the *Maldonado Bautista* court [] confirmed the limitations of its own declaratory relief ruling so as not to automatically confer nationwide habeas relief to all class members." (Doc. No. 8 at 2.)

The *Maldonado Bautista* petitioners were "foreign nationals arrested pursuant to warrants issued by" U.S. immigration authorities who were "charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), or as being present without admission in the United States." *Maldonado Bautista*, 2025 WL 3713987 at *1. Each of the petitioners in *Maldonado Bautista* "requested bond hearings, all of which were denied by an Immigration Judge ("IJ") between July 15, 2025, and July 22, 2025." *Id.* In each of those bond orders, "the [immigration judge] cited to Section 235(b) of the INA (i.e., 8 U.S.C. § 1225) as grounds for lack of jurisdiction." *Id.* The court in *Maldonado Bautista* noted that those "Bond Orders were based in a recent change in policy by the Department of Homeland Security." *Id.* Specifically, "[o]n July 28, 2025, the Department of Homeland Security (DHS) instituted a notice titled 'Interim Guidance Regarding Detention Authority for Applicants for Admission'" (the "DHS Policy"). *Id.* Therein, DHS provided notice that it had "'revisit[ed] its legal position on detention and release authorities,' and determined that Section 235 of the Immigration and Nationality Act ("INA") [8 U.S.C. § 1225] would serve as the applicable immigration detention authority rather than Section 236 [8 US.C. § 1226] for all 'applicants for admission.'" *Id.* (quoting DHS Policy). Thus, as summarized by the court in *Maldonado Bautista*, "the change in policy requires ICE employees to consider anyone arrested in the United States and charged with being inadmissible as an 'applicant for admission' under 8 U.S.C. § 1225(b)(2)(A)," pursuant to which those noncitizens "are subject to mandatory

detention for [removal] proceedings" and are "not entitled to the due process protections found within § 1226(a)." *Id.*

The court in *Maldonado Bautista* certified a class consisting of:

> All citizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Id.* at *2. The *Maldonado Bautista* court then found that the "plain language of § 1226(a) support[ed] Petitioners' interpretation," and therefore "§ 1226(a) is the appropriate governing authority over [the p]etitioners' detention," not § 1225 as stated in the DHS Policy. *Id.* at *10.

Because the *Maldonado Bautista* court found that the DHS Policy wrongfully subjected class members to mandatory detention under § 1225, and because § 706(2)(A) of the Administrative Procedure Act requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "arbitrary, capricious,. . . or otherwise not in accordance with law," the *Maldonado Bautista* court found that the "only possible outcome following the Court's interpretative determination regarding the INA is vacatur [of the DHS Policy] under the [Administrative Procedure Act]." *Id.* at *15, *16 (quoting 5 U.S.C. § 706(2)(A)). Thus, the court declared the DHS Policy unlawful and vacated its applicability as to all class members. *Id.* at *22.

The court noted, however, that the Immigration and Nationality Act requires that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation" of removal proceedings, "other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." *Id.* at *29; 8 U.S.C. 1252(f)(1). Thus, the court clarified that it could not issue "an order by the Court to require Respondents to provide habeas relief for all class members across the nation," therefore the order merely extended the court's "declaration of the unlawful nature of the DHS Policy to the APA claim" to all class members, thereby rendering "the very DHS Policy upon which immigration judges [] and the Executive Office for Immigration Review have cited as grounds for

9

its denial of bond hearings a nullity." *Id.* In the judgment, the court in *Maldonado Bautista* declared that class members were detained under § 1226(a) and therefore are not subject to mandatory detention under § 1225(b)(2) and "are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge." *Maldonado Bautista v. Noem*, 2025 WL 3678485 at *1. The court also vacated the DHS Policy "under the Administrative Procedure Act as not in accordance with law." *Id*.

Here, neither party disputes that Petitioners are members of the *Maldonado Bautista* class. Therefore, Petitioners contend they are entitled to the same relief provided to those class members. (Doc. No. 2-1 at 10–13.) But as discussed above, the court in *Maldonado Bautista* explicitly clarified that it could not issue injunctive relief to class members ordering their immediate release or entitlement to a bond hearing. *Maldonado Bautista*, 2025 WL 3713987 at *29. Instead, the court indicated that it was declaring the DHS Policy "upon which immigration judges [] and the Executive Office for Immigration Review have cited as grounds for its denial of bond hearings a nullity." *Id.*

Critically, Petitioners in this case confirmed that they have not requested a bond hearing, and therefore Petitioners have not shown that they have been denied a bond hearing due to adherence to the DHS Policy. (Doc. No. 11 at 5.) Petitioners contend that they need not request a bond hearing to demonstrate that they are subject to detention under the DHS Policy because "such requests would be futile given Respondents' positions on this issue." (*Id.*) Petitioners cite recent guidance from the Chief Immigration Judge asserting that "*Maldonado Bautista* is not a nationwide injunction and does not purport to vacate, stay, or enjoin *Yajure Hurtado*," and that "*Yajure Hurtado* remains binding precedent on agency adjudication" to support this proposition.[6]

---

[6] In *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), the Board of Immigration Appeals ("BIA") affirmed the broader interpretation of "applicants for admission" and found mandatory detention under § 1225 applied to the broader interpretation, including noncitizens who entered without inspection and were not apprehended upon entry. The BIA did not specifically address the DHS Policy in *Yajure Hurtado*. In its February 18, 2026 order, the court in *Maldonado Bautista* acknowledged the Chief Immigration Judge's guidance, and vacated both that guidance and *Yajure Hurtado* as unlawful because "*Yajure Hurtado* is functionally

1  (*Id.*) (citing Doc. No. 1-2 at 42.)

2  Petitioners' position contrasts with the petitioners in *Maldonado Bautista*, who requested and were denied bond hearings on jurisdictional grounds. *Maldonado Bautista*, 2025 WL 3713987 at *1. Further, because Petitioners were all detained before the *Maldonado Bautista* court issued its order vacating the DHS Policy, that order had no effect on the statutory basis for Petitioners' detention at the time of their arrest. The *Maldonado Bautista* order explicitly did not issue injunctive relief nor nationwide habeas relief, and Petitioners cite no authority stating that declaratory relief applies retroactively such that Respondents are obligated to revisit custody determinations made before its issuance. Finally, the court is aware of post-*Maldonado Bautista* cases in which immigration judges have considered a noncitizen's eligibility for bond, sometimes in the alternative to determining that the immigration court does not have authority to consider eligibility pursuant to the DHS Policy, despite the government's position that those noncitizens are subject to mandatory detention under § 1225. *See, e.g., Guerrero Espinosa v. ICE Field Office Director*, No. 2:26-cv-00034-JHC, 2026 WL 295191, at *1, *2 (W.D. Wash. Feb. 4, 2026) (denying noncitizen petitioner's request for order requiring bond hearing because "even construing [petitioner's] argument that he should be detained under Section 1226(a) as contending that he should not be detained under Section 1225(b)(2)(A), that argument is not persuasive" as the immigration judge's "alternative determination that [Petitioner] is a flight risk [] forms a separate basis for the legality of Petitioner's custody"); *Maksim Zaitsev v. Warden*, No. 26-cv-00454-SPG-AS, 2026 WL 391429, at *3–*4 (C.D. Cal. Feb. 9, 2026) (noting that the immigration judge twice denied petitioner's request for a bond hearing under the DHS Policy, but on the petitioner's third request the immigration judge "considered Petitioner's request for bond and determined that DHS met its burden to establish by clear and convincing evidence that Petitioner's release would pose such a significant flight risk that no amount of bond and/or

---

equivalent to the DHS [] Policy." *Maldanado Bautista v. Santacruz*, No. 25-cv-01873-SSS-BFM, Doc. No. 116 at *16 (C.D. Cal. Feb. 18, 2026). This February 18, 2026 *Maldonado Bautista* order does not impact this court's analysis in this case because none of the Petitioners here have shown that they were denied bond hearings based on the DHS Policy, the Chief Immigration Judge's guidance, or *Yajure Hurtado*. Indeed, they concede that they have not requested bond hearings.

11

alternatives to detention would be appropriate") (citation omitted); *Quinonez Torres v. Hermosillo*, No. 26-cv-00076-TLF, 2026 WL 445561, at *10 (W.D. Wash. Feb. 17, 2026) ("In this case, the [immigration judge] has conducted a bond hearing and denied bond because the [immigration judge] held that mandatory detention was required under 1225(b)" but "made an alternative finding that, to the extent the immigration judge had jurisdiction, that petitioner was a flight risk but should be released on a bond of $4,000.")).

Here, Petitioners concede that they have not requested bond hearings and therefore have not had their requests for bond hearings denied due to adherence with the DHS Policy. Petitioners' contention that a request for a bond hearing is futile, despite some immigration judges considering eligibility for bond post-*Maldonado Bautista*, is insufficient to warrant the extraordinary remedy of injunctive relief. Because the *Maldonado Bautista* order explicitly does not provide habeas relief to class members and only declares the DHS Policy as void, that ruling has no effect on Petitioners given that they have not established that they are being detained without a bond hearing specifically due to the DHS Policy.[7] Accordingly, the court finds that Petitioners have not demonstrated a likelihood of success on the merits of their claim that Petitioners are entitled to relief pursuant to their status as *Maldonado Bautista* class members and

---

[7] Because the court determines that Petitioners have not demonstrated that they are detained pursuant to the DHS Policy, it need not consider whether *Maldonado Bautista* is otherwise binding on this court. The court notes, however, that other courts have determined that *Maldonado Bautista* is not binding outside of the district of its issuance. *A.H.C.C. v. Warden, Irwin Co. Detention Center*, No. 25-cv-00192-WLS-ALS, 2026 WL 36692 at *1 n.1 (M.D. Ga. Jan. 6, 2026) (granting noncitizen petitioner a bond hearing under § 1226 but noting that "to the extent the Parties make arguments based on a belief that Petitioner is a member of the 'Bond Eligible Class' previously certified in [*Maldonado Bautista*], any potential membership in that class has no effect on the Court's decision" because "in granting declaratory relief, the District Court correctly noted that habeas relief could only be afforded to class members who were located within the boundaries of the Central District of California."); *Alvarez-Felix v. Ramos*, No. 26-01041, 2026 WL 438160 at *6 (D.P.R. Feb. 17, 2026) ("Accordingly, the only district with jurisdiction over Petitioner's habeas corpus claim is the district of confinement, that is, the District of Puerto Rico, and not the Central District of California. The Court thus concludes that it is neither divested of jurisdiction nor bound by *Maldonado Bautista*'s ruling."); *Rodriguez v. Jeffreys*, No. 25-cv-00714, 2025 WL 3754411 at *8 (D. Neb. Dec. 29, 2025) ("[T]he Central District of California never had jurisdiction over [the petitioner's] habeas action, even if he fit the definition of an eligible class member, and this Court certainly is not bound by any decision of the court in *Maldonado Bautista*.").

will deny Petitioners' motion for a preliminary injunction.[8]

## CONCLUSION

For the reasons explained above,

1. Petitioners' motion for a temporary restraining order, converted to a motion for a preliminary injunction, (Doc. No. 2) is DENIED without prejudice; and

2. This matter is referred to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated: **February 23, 2026**

Dena Coggins
United States District Judge

---

[8] The court notes that Petitioners have also asserted claims for violation of the Immigration and Nationality Act and violation of Petitioners' constitutional right to due process. (*See* Doc. No. 1.) Petitioners did not, however, base their motion for a preliminary injunction on either of these claims. Further, when the court directed Petitioners to provide further information regarding their due process claims, as the court has previously granted relief in similar cases on due process grounds, Petitioners confirmed that their request for injunctive relief was predicated on their membership in the *Maldonado Bautista* class. (Doc. No. 11 at 1–2.) Accordingly, the court does not consider Petitioners' other claims in this order.